FILED

2024 Sep-25  PM 03:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| POLARIS INDUSTRIES, INC., | ) ) | |
| Defendant. | ) ) | JURY TRIAL DEMAND |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg, *et seq.* ("PWFA"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of pregnancy, childbirth, or related medical conditions and to provide appropriate relief to Charging Party Jessica Bond ("Charging Party"), who was adversely affected by such practices. As alleged with greater particularity below, Defendant Polaris Industries, Inc. ("Defendant") denied Charging Party a reasonable accommodation relating to her pregnancy and constructively discharged her after she requested a reasonable accommodation.

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to 42 U.S.C. § 2000gg-2, the provision of the PWFA that incorporates the remedies and procedures set forth in 42 U.S.C. §§ 2000e-5(f)(1) and 1981a.

2.     The employment practices alleged to be unlawful were committed in Madison County, Alabama, which is within the jurisdiction of the Northeastern Division of the United States District Court for the Northern District of Alabama.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of the PWFA, and is expressly authorized to bring this action by 42 U.S.C. § 2000gg-2(a)(1) and Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant has continuously been a Delaware corporation doing business in Madison County, Alabama and has continuously had over 15 employees.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000gg(2)(b) and Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6.     More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the PWFA by Defendant.

7.     On August 5, 2024, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the PWFA was violated and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.     In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

2

9.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.    On August 29, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12.    At all relevant times, Defendant has manufactured vehicles at its Madison, Alabama plant.

13.    Defendant hired Charging Party on or around June 19, 2023 as an operator on Line 1 installing floor panels in electric vehicles.

14.    Charging Party told Defendant that she was pregnant when she attended new employee orientation.

15.    Defendant assigned Line 1 a daily production goal and required operators on Line 1 to frequently work more than 40 hours per week to meet that goal.

16.    Other production lines were not required to work overtime as frequently as Line 1.

17.    During Charging Party's employment, there were open positions available on other production lines which did not require overtime as frequently as Line 1.

18.    During Charging Party's employment, there were other employees available to temporarily fill operator positions on Line 1 as needed when operators were absent.

19.    Charging Party required periodic pregnancy-related medical appointments which she informed her supervisor about.

20.    Charging Party developed pregnancy-related conditions such as nausea, swelling in her feet, aching joints, and suspected gestational diabetes which also required her to be temporarily absent from work.

21.    Under Defendant's Attendance Policy, Charging Party was not permitted any absences other than those related to military duty, jury duty, subpoenaed witness testimony, bereavement, or inclement weather called by Polaris. Any employee who experienced more than two unexcused absences during their probationary period was subject to termination.

22.    Under Defendant's policies, Charging Party was not eligible to accrue paid time off until after completing her 60 day probationary period. As a result, Defendant assessed attendance points against Charging Party for absences necessitated by her pregnancy-related medical conditions and medical appointments.

23.    Charging Party expressed concern to two of Defendant's Human Resources representatives that she was pregnant and accruing attendance points due to limitations related to her pregnancy, including prenatal care appointments, and pregnancy-related medical conditions. Charging Party expressed concern that these attendance points would lead to her termination and asked how she could avoid termination. Human Resources told her that she would continue to receive attendance points unless she had accrued paid time off leave after her probationary period.

24.    Charging Party's pregnancy-related conditions such as nausea, swelling in her feet, aching joints, and suspected gestational diabetes were exacerbated by working more than 40 hours per week.

25.    On or around September 5, 2023, Charging Party requested a temporary accommodation to not work overtime. Charging Party gave Defendant's occupational health nurse

4

a note from her doctor stating she was temporarily restricted to work a maximum of 40 hours per week.

      26.      Also, on or around September 5, 2023, the occupational health nurse emailed Defendant's Human Resources Manager that Charging Party had been placed on "pregnancy restrictions" of "No working over 40 hours per week" with an end date of December 2023. Four minutes later, the Human Resources Manager replied, "We cannot accommodate this restriction as overtime is an essential function of the position."

      27.      On or around September 7, 2023, Defendant's Human Resources Manager emailed Charging Party denying her accommodation request and stating that the requested accommodation would impose an undue hardship.

      28.      Charging Party replied to the email stating:

> I have a few questions regarding the accommodations request that was denied for my pregnancy. If you don't mind me asking what undue hardship would me only being able to work 40 hours a week cause our company of 2000 employees? My current zone on the line has a[n] overflow of employees currently, so much so my one man station has 2 people operating it everyday not because I can't on my own but because there is simply no other open station for the other employees to be placed in. [W]e also have a floater who has no station just goes where needed when we have a call out. Lastly I would like to understand if my no overtime accommodation isn't able to be met how will my 6 week absent [sic] be able to be met when I go on maternity leave in 2 months?

The Human Resources Manager did not respond.

      29.      Charging Party also told the Human Resources Specialist assigned to Line 1 that her accommodation request for no overtime had been denied and that she needed the accommodation because of her pregnancy. The Human Resources Specialist told Charging Party that her doctor could give her pregnancy restrictions, but the doctor did not know Defendant's policies. Charging Party reminded the Human Resources Specialist that her accommodation

request would not pose a hardship because there already were extra workers on Line 1 because two people worked at her station which was a one-person station.

30.     Both the Human Resources Manager and the Human Resources Specialist referred Charging Party to Defendant's third-party disability provider. Charging Party applied for leave through the provider and was denied on or around September 22, 2023 based on not having met the required number of service months.

31.     On or around October 16, 2023, Charging Party's supervisor advised her that if she accrued one more attendance point, she would be terminated. Charging Party was forced to resign because she understood that continuing to work overtime violated medical restrictions from her physician and that she would be terminated the next time she needed to attend a medical appointment or take leave due to pregnancy-related limitations.

32.     Multiple accommodations were available for Charging Party that would not have caused undue hardship to Defendant.

## STATEMENT OF CLAIMS

### COUNT I - FAILURE TO ACCOMMODATE KNOWN LIMITATIONS RELATED TO PREGNANCY IN VIOLATION OF 42 U.S.C. § 2000gg-1(1)

33.     Plaintiff realleges and incorporates by reference paragraphs one (1) through thirty-two (32) herein.

34.     From at least as early as June 2023, Defendant has engaged in unlawful employment practices at its Madison, Alabama location in violation of 42 U.S.C. § 2000gg-1(1).

35.     Specifically, Defendant denied Charging Party a reasonable accommodation due to the known limitations related to her pregnancy or related medical conditions.

36.     Charging Party requested accommodations for her known limitations of pregnancy or related conditions, including the ability to take time off for medical appointments and

pregnancy-related medical conditions without accruing attendance points, and exemption from mandatory overtime, which Defendant denied.

37.     Charging Party was a qualified employee under the PWFA because she could perform the essential functions of her job.

38.     To the extent that Charging Party could not perform an essential function of the job, she was qualified under the PWFA because the inability to perform that function was for a temporary period, the essential function could be performed in the near future, and the inability to perform the essential function could be reasonably accommodated.

39.     Charging Party informed Defendant's supervisory and Human Resources personnel about known limitations related to, affected by, or arising out of her pregnancy, including the need for pregnancy-related medical appointments, and limitations related to, affected by, or arising out of pregnancy-related medical conditions.

40.     Defendant denied Charging Party a reasonable accommodation to its Attendance Policy by refusing to permit her to take time off for pregnancy-related medical appointments and limitations arising out of pregnancy-related medical conditions without incurring points (or "occurrences") under the policy, which put Charging Party at risk of termination.

41.     Defendant denied Charging Party a reasonable accommodation of exempting her from overtime, an accommodation to Charging Party's known limitations arising out of pregnancy, childbirth, or related conditions.

## COUNT II – CONSTRUCTIVE DISCHARGE
## IN VIOLATION OF 42 U.S.C. § 2000gg-1(5)

42.     Plaintiff realleges and incorporates by reference paragraphs one (1) through thirty-two (32) herein.

7

43.     From at least as early as June 2023, Defendant has engaged in unlawful employment practices at its Madison, Alabama location in violation of 42 U.S.C. § 2000gg-1(5).

44.     Specifically, Defendant took adverse action in terms, conditions, and privileges of employment against Charging Party on account of her requesting reasonable accommodation to the known limitations related to her pregnancy or related medical conditions.

45.     Charging Party was a qualified employee under the PWFA because she could perform the essential functions of her job.

46.     To the extent that Charging Party could not perform an essential function of the job, she was qualified under the PWFA because the inability to perform that function was for a temporary period, the essential function could be performed in the near future, and the inability to perform the essential function could be reasonably accommodated.

47.     Charging Party informed Defendant's supervisory and Human Resources personnel about known limitations related to, affected by, or arising out of her pregnancy and need for pregnancy-related medical appointments.

48.     Charging Party requested reasonable accommodations to the known limitations related to her pregnancy and related medical conditions, including time off to attend medical appointments and for pregnancy-related medical conditions, and to be excused from Defendant's mandatory overtime requirement.

49.     Defendant denied Charging Party's requested accommodations and assessed attendance points against Charging Party for pregnancy-related absences that would result in her imminent termination.

50.     Defendant denied Charging Party her request to be excused from mandatory overtime.

8

51.     Charging Party elected to resign her employment as she knew she faced imminent termination due to the assessment of attendance points for her pregnancy-related absences and because her working environment had become intolerable due to Defendant's ongoing failure to accommodate her limitations related to her pregnancy.

52.     Defendant's actions, including the continued assessment of attendance points for pregnancy-related absences and refusal to excuse Charging Party from mandatory overtime, created a working environment so intolerable that a reasonable person in Charging Party's situation would have felt compelled to resign.

53.     Defendant's actions and failure to provide a reasonable accommodation resulted in Charging Party's termination or constructive discharge.

### ADDITIONAL ALLEGATIONS

54.     The unlawful employment practices complained of in paragraphs eleven (11) through fifty-three (53) above were intentional.

55.     The unlawful employment practices complained of in paragraphs eleven (11) through fifty-three (53) above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from violating the PWFA.

B.    Order Defendant to (1) institute and carry out policies, practices, and programs which provide a workplace free from discrimination based on pregnancy, childbirth, or related medical conditions, (2) require employees, managers, and officers to undergo training on applicants' and employees' rights under the PWFA, including the right to accommodation, and (3) provide multiple avenues for applicants and employees to request accommodation under the PWFA.

C.    Order Defendant to make Charging Party whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.    Order Defendant to make whole the Charging Party by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs eleven (11) through fifty-three (53) above, including lost wages, lost benefits, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

E.    Order Defendant to pay to Charging Party punitive damages for its malicious and reckless conduct described in paragraphs eleven (11) through fifty-three (53) above, in amounts to be determined at trial.

F.    Grant such further relief as the Court deems necessary and proper in the public interest.

G.     Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.


RESPECTFULLY SUBMITTED,

Karla Gilbride
General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

MARSHA RUCKER (PA Bar No. 90041)
Regional Attorney
marsha.rucker@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 651-7045